THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALEXANDER VESEY (B-51908),

        Plaintiff,

    v.

OFFICER OWENS, DIRECTOR MILLER,
and SUPERINTENDENT THOMAS,

        Defendants.

No. 13 CV 7367

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alexander Vesey, currently an Illinois prisoner confined at Stateville Correctional Center, brought this *pro se* 42 U.S.C. § 1983 lawsuit. Plaintiff alleges that defendants Director Miller and Superintendent Thomas subjected him to being transferred from the Cook County Department of Corrections to outlying county jails even though he was in protective custody and feared for his safety. Plaintiff also alleges that defendant Officer Scott Owens failed to protect him from a physical altercation that occurred on January 23, 2013, with another detainee at the Jerome Combs Detention Center in Kankakee, Illinois.

Defendants move for summary judgment. [43], [49].[1] Plaintiff has responded to the motions. [57], [58]. For the reasons stated below, both motions for summary judgment are granted.

---

[1] Citations to the record are designated by the document number as reflected on the district court's docket, enclosed in brackets.

**BACKGROUND**

## I.    Northern District of Illinois Local Rule 56.1

Because plaintiff is a *pro se* litigant, he was served with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. [46].[2] The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other

---

[2] Defendant Owens does not appear to have served plaintiff with a Local Rule 56.2 Notice. Any error in failing to do so is harmless given that defendants Miller and Thomas served plaintiff with same on February 10, 2015, [46], well before plaintiff's response to defendants' motions was due on April 3, 2015, [41]. *See Kincaid v. Vail*, 969 F.2d 594, 599 (7th Cir. 1992) (holding that the summary judgment movant's failure to serve a Local Rule 56.2 notice on a *pro se* non-movant is without legal significance "if no prejudice resulted."); *Timms v. Frank*, 953 F.2d 281, 286-87 (7th Cir. 1992) ("[I]n light of Timms's inability to show that the lack of notice prejudiced her, the district court's grant of summary judgment is affirmed.").

supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support the statement of additional facts. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

Generally, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (holding that *pro se* plaintiff's statement of material facts did not comply with Rule 56.1 as it "failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture."). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632; *see also Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 513 (7th Cir. 2013).

In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the

parties to nail down the relevant facts and the way they propose to support them."

*Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012).

Consistent with the Local Rules, both sets of defendants filed Local Rule 56.1(a)(3) Statements of Material Facts with their summary judgment motions. [44], [51]. Plaintiff responded to the defendants' motions for summary judgment with what he has captioned a "motion of limine,"[3] [57], and an "affidavit" in opposition to the motions, [58]. Attached to plaintiff's "affidavit" is a document captioned "list of facts." [58] at 2. With respect to this "list of facts," plaintiff has not cited evidentiary material in support of each statement. Additionally, plaintiff has responded to some of defendants' facts with arguments. Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced"); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir.1994). To the extent plaintiff failed to respond properly to defendants' L.R. 56.1 statements of fact with references to the record in support of denial, the statements are deemed admitted. Notwithstanding these admissions, the court construes plaintiff's submissions, and the record evidence, in the light most favorable to him.

---

[3] In this motion, plaintiff appears to be requesting that the court preclude the "introduction" of certain information related to his criminal and disciplinary history in this case. However, "[t]rial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Given that this case is at the summary judgment phase, the motion is denied on the basis that it is inapplicable. Nonetheless, because the court is required to liberally construe *pro se* pleadings, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), it considers the arguments set forth in this document to the extent they are responsive to the defendants' motions for summary judgment.

## II.     Facts

### 1.     Facts Relevant to Defendants Miller and Thomas

Beginning in January 2013, plaintiff began being transferred from CCDOC to outlying county jails. [44] at ¶ 5. Plaintiff is familiar with the grievance process at Cook County Jail. *Id.* at ¶ 6. Plaintiff is aware that if he is not content with any matter at CCDOC, a grievance needs to be submitted. *Id.* at ¶ 7. Grievances were always available to plaintiff at CCDOC, and he wrote grievances while detained at CCDOC. *Id.* at ¶¶ 8, 9. Plaintiff never wrote a grievance about being transferred to outlying county jails or about any matters pertaining to Director Miller or Superintendent Thomas. *Id.* at ¶ 10. Nothing prevented plaintiff from writing a grievance placing defendants Miller and Thomas, or anyone else at CCDOC, on notice that he was unhappy with transfer to outlying jails. *Id.* at ¶ 11. Plaintiff was not advised by personnel at the Cook County Jail that he could not write a grievance about the transfers at issue. *Id.* at ¶ 12.

The CCDOC has established a grievance procedure that is available to all inmates, and was available to plaintiff at all relevant times. *Id.* at ¶ 15. The CCDOC "Detainee Grievance Procedure" Sheriff's Order 11.14.5.0 governs the administrative grievance process at CCDOC and was in effect in 2013. *Id.* at ¶ 16. All detainees were provided with an inmate handbook containing the rules and regulations regarding the grievance process. *Id.* at ¶ 17. The CCDOC inmate handbook was available to plaintiff at the law library. *Id.* at ¶ 18.

The Detainee Grievance Procedure requires an inmate to properly file a grievance within 15 days of the alleged grievable offense, and appeal the grievance response within 14 days from receipt of the grievance response. *Id.* at ¶ 19. A search of CCDOC grievance records under plaintiff's Inmate Number 2011-0910168 for grievances and non-grievances/requests shows that one grievance and one request were filed pertaining to differing topics such as a medical condition and personnel issues with Cook County Jail. *Id.* at ¶ 20. No grievances or requests were located relating to any issue involving Superintendent Thomas or Director Miller about transfers to outlying jails. *Id.* at ¶ 21. Inmates are required to file a grievance and exhaust all administrative remedies prior to filing a related lawsuit. *Id.* at ¶ 22.

### 2. Facts Relevant to Defendant Owens

On January 23, 2013, plaintiff was an inmate detained at JCDC in Kankakee County, Illinois, after being found guilty of armed robbery. [51] at ¶ 1. On January 23, 2013, Officer Owens was an officer at the JCDC assigned to the south intake wing housing unit where plaintiff was housed. Id. at ¶ 2. On that date, while detained at JCDC, plaintiff was involved in an incident with another inmate by the name of William McKinzie. *Id.* at ¶ 4. The south intake housing unit was a medical housing unit where inmates from Cook County who are classified as protective custody inmates are housed. Plaintiff did not attempt to be re-classified at JCDC and remained in the south intake wing with other protective custody inmates from Cook County. *Id.* at ¶ 6. Inmates within the south intake wing housing unit are

allowed to move around freely within the unit to do things such as play cards and watch TV, and they are not handcuffed or otherwise restricted. *Id.* at ¶ 7.

Plaintiff only knew two other individuals in the south intake wing housing unit and had no problems with either inmate. *Id.* at ¶ 8. Plaintiff had no enemies or inmates he had previously fought with in the south intake wing housing unit. Plaintiff had not been involved in an altercation with any inmate during his stay at the JCDC. *Id.* at ¶ 9.

Plaintiff did not know inmate William McKinzie, had never spoken to him, and never had any communication or prior dealings at all with him prior to January 23, 2013. *Id.* at ¶¶ 10-12. Plaintiff never informed Officer Owens or any correctional officer within the JCDC that he was afraid of McKinzie or that he feared that he and McKinzie may fight. *Id.* at ¶ 13. Plaintiff was never previously threatened by McKinzie and did not fear any attack from McKinzie. *Id.* at ¶ 14. Plaintiff and McKinzie did not have no-contact orders against one another. *Id.* at ¶¶ 15, 16. Plaintiff did not have a no-contact order with any inmate within the south intake wing housing unit, and never had any arguments or problems with any inmate within the south intake wing housing unit. *Id.* at ¶ 17. Plaintiff never filed a written request slip to be moved away from McKinzie or to be removed from the south intake wing housing unit. *Id.* at ¶ 20.

On January 23, 2013, plaintiff was watching television while sitting in a chair in the south intake wing. *Id.* at ¶ 22. McKinzie and a second inmate were

standing behind plaintiff having a conversation. Plaintiff did not hear any argument between the two inmates. *Id.* at ¶ 23. Plaintiff did not believe that McKinzie and the second inmate were going to fight, nor did plaintiff believe McKinzie would strike plaintiff. *Id.* at ¶ 24. Plaintiff did not speak to Officer Owens or alert him to any potential issue between himself and McKinzie. *Id.* at ¶ 25. The second inmate that McKinzie was speaking to left the conversation with McKinzie and walked back to his cell. Plaintiff continued to watch television. *Id.* at ¶ 26. There was no previous altercation on the housing unit that day that would have put the correctional officers on alert of a potential fight or altercation, nor would any correctional officer have any reason to believe that an incident would occur. *Id.* at ¶ 27. Plaintiff had no reason to fear for his safety and never told Officer Owens that he feared anyone. *Id.* at ¶ 28.

At the time of the incident, Officer Owens was speaking on the JCDC phone at the officer's housing unit desk and his portable radio was directly in front of him approximately inches away on the officer's housing unit desk. *Id.* at ¶ 29. Plaintiff was sitting directly in front of Officer Owens at the housing unit desk in a green chair watching television. *Id.* at ¶ 30.

McKinzie remained behind plaintiff after the inmate he was speaking to walked back to his cell. *Id.* at ¶ 31. Without warning, McKinzie reached over the officer's housing unit desk and grabbed the radio off of the desk that was directly in front of Officer Owens and immediately struck plaintiff in the head with the radio.

Plaintiff did not see the assault. *Id.* at ¶ 32. McKinzie did not say or yell anything before he struck plaintiff. *Id.* at ¶ 33. McKinzie's strike on plaintiff was instantaneous and lasted less than one second after he reached over the officer's housing unit desk to steal the radio and strike Plaintiff. There was no time to prevent McKinzie's actions nor is there any JCDC rule or policy that states that an officer's radio must be on their side at all times. *Id.* at ¶ 34.

Plaintiff immediately felt his head and realized he was bleeding from the strike from McKinzie. *Id.* at ¶ 35. McKinzie began yelling that he was going to kill plaintiff, and plaintiff responded that he was going to attack McKinzie. *Id.* at ¶ 36. Within seconds of striking plaintiff, McKinzie took a few steps back from plaintiff and jumped over the housing unit officer's desk onto the same side as Officer Owens. *Id.* at ¶ 37. Officer Owens immediately began to yell at McKinzie to put the radio down and get on the ground. Officer Owens then immediately called "10/10" over the JCDC phone system to inform correctional officers of a fight in progress. *Id.* at ¶ 38. Within seconds, the inmates who were on the outside of the officer's housing unit desk began to circle the desk to attack McKinzie. *Id.* at ¶ 39. Officer Owens was screaming to all of the inmates that were circling the officer's housing unit desk to get back, and told them to go back to their cells and that no other inmates were going behind the desk to go after McKinzie. *Id.* at ¶ 40.

Another inmate picked up the green chair that plaintiff was sitting in and threw it over the officer's housing unit desk at McKinzie, and plaintiff threw a

pencil sharpener at McKinzie. *Id.* at ¶ 41. McKinzie threw the radio down on the ground and picked up a flashlight from behind the officer's housing unit desk. *Id.* at ¶ 42. Officer Owens continued to yell at McKinzie to put the flashlight down, get back, and get on the ground. He also continued to yell at the other inmates to get back to their cells. *Id.* at ¶ 43. Officer Owens came directly up to McKinzie and began pointing at him and ordered him to get on the ground and put down the flashlight. *Id.* at ¶ 44. Officer Owens was attempting to isolate McKinzie by urging and pointing him to go through a door to another housing unit away from the inmates within the South Intake Wing. *Id.* at ¶ 45.

Plaintiff was not struck a second time by McKinzie with either the radio or the flashlight. *Id.* at ¶ 46. Officer Owens put his hands out to stop McKinzie from approaching any of the other inmates, but never touched him. Officer Owens continued to yell at McKinzie to get on the ground. *Id.* at ¶ 47. Plaintiff admits that Officer Owens was trying to secure McKinzie and trying to put handcuffs on him while continuing to persuade him to get on the ground. *Id.* at ¶ 48.

Several other correctional officers came to the door of the south intake wing with tasers drawn and began yelling at McKinzie to get on the ground. McKinzie complied and was on the ground within approximately one minute after he struck plaintiff. *Id.* at ¶ 49. McKinzie was handcuffed within the south intake wing approximately one minute and thirty seconds after he struck plaintiff. McKinzie was then removed from the south intake wing. *Id.* at ¶ 50.

The policy in JCDC is that before a correctional officer engages in any physical tactics to control or alter an inmate during a fight, or a "10/10," the officer must wait for back-up officers and a taser for his safety. Plaintiff was aware of this policy. *Id.* at ¶ 51. Plaintiff's physical injury was a 1.5 cm scalp laceration. Plaintiff was taken to a local hospital and received a few staples. *Id.* at ¶ 52.

## III. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**B.      Motion for Summary Judgment (Miller and Thomas)**

In support of their motion for summary judgment, Miller and Thomas argue that plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, § 1997e(a).  Specifically, defendants argue that plaintiff's failure to file a grievance with respect to any claim involving plaintiff's transfers to outlying counties or being in fear for his life means plaintiff failed to exhaust his remedies, and dooms his claims.  Defendants are correct.

The PLRA requires the exhaustion of "administrative remedies as are available." 42 U.S.C. § 1997e(a). An inmate must use "'all steps that the agency holds out," and he must "do[] so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The Seventh Circuit takes a "strict compliance" approach to exhaustion and interprets the PLRA to require a prisoner to properly use the institution's grievance process by following its specific rules and procedures. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner must exhaust administrative remedies even if he believes that the process is futile or requests relief that the relevant administrative body does not have the power to grant. *Id.* at 808–09.

Here, the evidence in the record shows that plaintiff filed the instant lawsuit without filing any grievances at CCDOC relating to being transferred to outlying county jails or being in fear for his life prior to filing the instant lawsuit.  Plaintiff

testified that he was familiar with the grievance system and that grievance forms were available to him. [44] at ¶¶ 1, 6, 7, 8, 10-12. Nonetheless, he did not submit a grievance. Plaintiff testified at his deposition that nothing prevented him from doing so, and that no one at CCDOC told him he could not grieve about being transferred to outlying counties or any other relevant issue. [44-2] at p. 142–144, 146.

As set forth above, CCDOC has an established grievance procedure, which was in place at the time surrounding plaintiff's allegations, and which requires CCDOC inmates to file a grievance to exhaust all administrative remedies prior to filing a related lawsuit. *Id.* at ¶¶ 15, 22. Plaintiff was aware of the need to file grievances to address problems he had at CCDOC. *Id.* at ¶ 7. Plaintiff's failure to file a grievance with respect to any claim(s) involving his transfers to outlying counties or that he feared for his safety renders these claims unexhausted.

In his responsive papers, plaintiff does not expressly admit or deny that he failed to file a grievance with respect to the transfers or with respect to being in fear for his life. However, he does assert that he sent "request slips" through his counselor requesting to be "taken off transfer." [58] at 2, ¶ 12. Plaintiff also asserts that, during the time of his transfers, he had in his possession a letter from his criminal defense attorney complaining of the transfers. *Id*. at 2 ¶ 12.

Plaintiff testified during his deposition that he sent "request slips" to his counselor asking to be taken off the transfer list not because he feared for his life,

but because he was "trying to fight [his] criminal case." Plaintiff's Deposition, [44-2] at p. 116:1-2. Similarly, the letter from plaintiff's criminal defense attorney, which plaintiff has attached as an exhibit to his affidavit ([58] at Ex. B), complains of the transfers not because they placed plaintiff in harm's way, but because the transfers were interfering with the attorney's ability to represent plaintiff. Additionally, while the letter from plaintiff's attorney asks that the transfer issue be raised with jail authorities, it is addressed to the Deputy Director of Suburban Operations of the Cook County Public Defender's Office. *Id.* Plaintiff does not assert, nor does he attach any documentation, indicating that the matter was ever actually raised with prison authorities.

In any event, even if plaintiff believed, albeit honestly but erroneously, that the informal "request slips" submitted to his counselor and/or the letter from his criminal defense attorney were individually or collectively sufficient to exhaust his claims, this would still not be enough to defeat the defendants' summary judgment motion. The courts have been clear that a plaintiff's beliefs about the availability of the grievance process do not excuse exhaustion. *Twitty v. McCoskey*, 226 Fed. Appx. 594, 596 (7th Cir. 2007) (citing *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)) (noting that 42 U.S.C. § 1997e(a) "says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them."); *see also Yousef v. Reno*, 254 F.3d 1214, 1221 (10th

Cir. 2001) (finding that assistant attorney general responding to prisoner's informal complaint had no duty to inform prisoner of prison's formal grievance procedures).

Additionally, the Court finds that there is no need to conduct a hearing pursuant to *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008). "The purpose of a *Pavey* hearing is to resolve disputed factual questions that bear on exhaustion, including what steps were taken and whether the futility exception might apply." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Pavey*). Because there is no factual dispute with respect to exhaustion in this case, a *Pavey* hearing is unnecessary.

Accordingly, the court finds that plaintiff failed to exhaust his administrative remedies and therefore grants defendants' motion for summary judgment on this ground. The dismissal of Plaintiff's claim against Miller and Thomas is without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("all dismissals under § 1997e(a) should be without prejudice."); *see also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (order dismissing § 1983 claims for failure to exhaust administrative remedies is appealable where there are no further remedies that plaintiff can pursue).

### C.    Motion for Summary Judgment (Owens)

In his motion for summary judgment, defendant Owens argues that plaintiff has failed to produce evidence to show that he was deliberately indifferent to a

serious risk of harm faced by plaintiff. Defendant also argues that he is entitled to qualified immunity.

The Constitution "imposes upon prison officials the duty to take reasonable measures to guarantee the safety of the inmates." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005), citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). The obligation to protect encompasses a duty "to protect prisoners from violence at the hands of other prisoners." *Brown*, 398 F.3d at 909; *Farmer*, 511 U.S. at 834. To establish a Fourteenth Amendment claim that correctional officials acted with deliberate indifference to his safety, the plaintiff must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with "deliberate indifference" to that risk. *Id*. The same standard applies to Eighth Amendment claims brought for failure to protect. *Grievson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008).

To satisfy the first prong of a failure to protect claim, a plaintiff must demonstrate not only that he experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Brown*, 398 F.3d at 911. "When [Seventh Circuit] cases speak of a 'substantial risk' that makes a failure to take steps against it actionable under the Eighth or Fourteenth Amendment, they also have in mind risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who

pose a 'heightened risk of assault to the plaintiff.'" *Id.* This general definition of "substantial risk" includes, of course, "risks so great that they are almost certain to materialize if nothing is done." *Id.*

Here, plaintiff has not come forward with any evidence tending show that he was incarcerated under conditions posing a substantial risk of harm. Rather, the evidence before this court shows that prior to the altercation on January 23, 2013, plaintiff had no problems with any other detainee. [51] at ¶¶ 8-10. At the time of the incident, plaintiff was detained within the south intake wing housing unit with other inmates from Cook County that were classified as protective custody and separated from other inmates. *Id.* at ¶¶ 5-7. Plaintiff only knew two of the other individuals within the south intake housing unit, and he had no problems with these two individuals. *Id.* at ¶¶ 8-10. Plaintiff did not know these two individuals as enemies, and referred to them as his "friends" at his deposition. *Id.* at ¶ 8; [44-2] at p. 40:5-7.

With respect to inmate McKinzie, plaintiff did not know him prior to the January 23, 2013 incident. He had never previously been threatened by McKinzie. [51] at ¶ 10. Plaintiff and McKinzie did not have no-contact orders against one another. *Id.* at ¶ 15. Plaintiff testified that he was unaware as to why McKinzie struck him on January 23, 2013, and that he was "shocked" when it happened. *Id.* at ¶¶ 19, 21.

To satisfy the second prong of a failure to protect claim, a plaintiff must show that the defendant acted with deliberate indifference to the substantial risk of serious harm. *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913. The defendant "must both be aware of the facts from which an inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913; *Riccardo*, 375 F.3d at 525. The subjective prong has two subparts: (a) knowledge of the risk, *Brown* at 913; and (b) a disregard of that risk. *Id.* at 916. Although the test is subjective, it may be proven through circumstantial evidence. *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (internal citation omitted). The relevant inquiry is whether correctional officials actually knew about the danger that the plaintiff faced, not whether a reasonable official should have known. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

Here, even taking the facts in the light most favorable to plaintiff, the record does not support an inference that Officer Owens acted with deliberate indifference to a substantial risk of known harm to plaintiff. Initially, plaintiff never informed Officer Owens that he feared for his safety in his housing unit or that he feared, in particular, McKinzie. [51] at ¶¶ 9, 13; Owens Aff. at ¶¶ 10, 11. Plaintiff never

requested to be moved out of protective custody or moved away from McKinzie prior to the January 23, 2013 incident. Plaintiff was never threatened by McKinzie, and plaintiff never asked authorities at JCDC to place him and McKinzie on a no-contact list. *Id.* at ¶¶ 13-18. In fact, the testimony from plaintiff's deposition shows that he had no idea why McKinzie even struck him. *Id.* at 21.

In his responsive affidavit, plaintiff does not explicitly assert that Officer Owens had knowledge of any risk that harm may come to him at the hands of McKinzie. However, plaintiff does assert that "[i]nmates in protective custody are always [prone] to danger it could be bullying, sexual abuse/harassment, taking of food etc." [58] at 2, ¶ 9. While this may be true and an unfortunate reality of prison life, a general risk of violence is not enough to establish knowledge of a substantial risk of harm. *See Shields*, 664 F.3d at 181; *Dale v. Poston*, 548 F.3d 563, 568 (7th Cir.2008). Were that enough, prison officials would, in effect, become strictly liable for all violence in the institution. And that, of course, is not the law. A plaintiff must show a tangible threat to his safety or well-being, *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir.2008), and that the defendant was subjectively aware of the risk, yet failed to take reasonable measures to prevent it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir.2006). Plaintiff has made no such showing here. Rather, the record evidence, including the short videotape capturing the incident (*see* [51] at Ex. C (video)), shows that the attack occurred suddenly, without warning, and lasted for no more than approximately a minute and a half. Further, the record shows that,

immediately after the initial blow was struck by McKinzie, Officer Owens actively took steps to defuse the situation and prevent plaintiff from being struck a second time.

Plaintiff does not even appear to dispute that Officer Owens acted in a reasonable manner after McKinzie struck the initial blow. Rather, he appears to take issue with the allegedly "careless actions" of Owens that led up to the incident, namely that Officer Owens "was on the pod telephone for over 35 minutes" and that he left his "radio unattend[ed]." [58] at 1, ¶¶ 4, 5; *see also* [57] at 1, ¶ 3. These allegations are not borne out by the record, which shows that, immediately prior to the attack, Officer Owens was engaged in his correctional officer duties and responsibilities and that his radio was inches away from him in front of his body. [51] at ¶¶ 29-34. Even assuming *arguendo* that Owens had been derelict in his official duties by being on the pod phone for "over 35 minutes" and/or in leaving his "radio unattended," these actions, at most, suggest negligence, not deliberate indifference. But, negligence and even gross negligence is insufficient to establish a failure to protect claim. *Grieveson*, 538 F.3d at 777.

Based on the record before this court, there is no evidence upon which a reasonable jury could find that Officer Owens was deliberately indifferent to a serious risk of harm faced by plaintiff. Therefore, defendant Owens is entitled to

summary judgment on plaintiff's deliberate indifference claim, and his motion for summary judgment is granted.[4]

<h2 align="center">CONCLUSION</h2>

For the reasons stated herein, the defendants' motions for summary judgment [43], [49] are granted. Plaintiff's motion in limine [57] is denied. The Clerk is directed to enter judgment in favor of defendants. The claim against Miller and Thomas is terminated without prejudice for failure to exhaust. The claim against Owens is terminated with prejudice.

If plaintiff wishes to appeal these final judgments, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If plaintiff does choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file

---

[4] Because no constitutional violation occurred, Officer Owens is also entitled to qualified immunity. If the facts do not make out a violation of a constitutional right, judgment in favor of the defendant on the ground of qualified immunity is appropriate. *Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009).

suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 6/12/15